IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Fabrica la Estrella S.A. de C.V., | ) | C.A. No. 6:05-466-HMH |
| | ) | |
| Plaintiff, | ) | |
| | ) | **OPINION AND ORDER** |
| vs. | ) | |
| | ) | |
| Miguel A. Banda, Bantex International, | ) | |
| Inc., and Coker International, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

This matter came before the court on Fabrica la Estrella S.A. de C.V. ("Plaintiff") and Coker International, LLC's ("Coker") cross motions for summary judgment. The court held a hearing on November 28, 2006. At the hearing, the court determined that no essential facts remained in dispute concerning the Plaintiff's claim pursuant to the Statute of Elizabeth, S.C. Code Ann. § 27-23-10(A). Further, the parties consented to the court deciding this matter on the merits. Therefore, after consideration of all of the relevant evidence of record and the arguments of the parties, the court now declares its findings of fact and conclusions of law. Should a finding of fact constitute a conclusion of law, or vice versa, the court adopts it as such and directs that it be treated accordingly.

## I. FACTUAL AND PROCEDURAL BACKGROUND

1. The Plaintiff, a Republic of Mexico company, is a broker of textile equipment.

2. On May 20, 2004, the Plaintiff entered into a purchase order with Bantex International, Inc. ("Bantex"), a textile equipment broker, for 16 Sulzer Ruti Model P7100 textile looms ("textile looms") at $29,300.00 each, for a total of $468,800. (Pl.'s Mem. Supp. Summ. J. Exs. D & E (Purchase Order).) The

1

purchase order provided that Bantex had until June 30, 2004, to deliver the looms. (Id.)

3. On May 17, 2004, the Plaintiff wired $80,000 to Bantex to purchase the textile looms. (Id. Exs. F & G (Wire Transfer).) Later, the Plaintiff agreed to purchase 12 looms under the purchase order at the same price per loom identified in the purchase order, for a total of $351,600. (Id. Ex. N (Ruben Zermeno Farias ("Farias") Aff. ¶ 4) & Ex. O (Banda Dep. at 17-18).) The Plaintiff wired the balance owed of $271,600 to Bantex on June 4, 2004. (Id. Exs. H & I (Second Wire Transfer).)

4. Bantex contacted Coker regarding purchasing the looms for a client of Bantex in Mexico. (Pl.'s Mem. Supp. Summ. J. Ex. J (Coker Invoice) & Ex. O (Banda Dep. at 9-10).) Coker agreed to provide the looms at an agreed price.

5. On June 7, 2004, Miguel A. Banda ("Banda"), Bantex's president, transmitted $300,000 in a company check to Coker to purchase the 12 looms for the Plaintiff. (Id. Ex. O (Banda Dep. at 10) & Ex. K (Check).) Coker delivered the company check to Bantex's bank, Capital Bank, and obtained an "official check" in the amount of $300,000. (Id. Ex. L (Official Check).)

6. Coker contacted the equipment broker that owned the looms and learned that the looms had been sold to another buyer. (Id. Ex. Q (Coker Dep. at 15-17).) After obtaining an official check and learning that the looms were no longer available, Coker informed Banda that the looms were no longer available and that it was not returning the money. (Id. Ex. O (Banda Dep. 13-14).) Coker did not deliver the equipment and retained the $300,000 to partially satisfy an outstanding

2

judgment dated April 20, 2004, for $389,000 which Coker had obtained against Banda individually ("Banda Judgment"). (Pl.'s Mem. Supp. Summ. J. Ex. A (Banda Judgment), Ex. Q (Coker Dep. at 20), & Ex. O Banda Dep. at 12-14).)

7. The Banda Judgment arose as the result of Banda's failure to fulfill his obligations in a previous transaction between Banda and Coker, which is wholly unrelated to the instant action. Coker had been unable to collect on the Banda Judgment, which was returned nulla bona. (Id. Ex. C (Nulla Bona Return).) The Plaintiff had no involvement in the unrelated transaction. (Id. Ex. N (Zarias Aff. ¶ f).)

8. Coker knew that Bantex transferred the money to Coker for the purpose of purchasing looms for Bantex's client in Mexico. (Id. Ex. Q (Coker Dep. at 20-21).)

9. As stated by Coker's counsel at the November 28, 2006, hearing, Coker later learned that the funds transferred to Coker from Bantex were the Plaintiff's funds for the purchase of looms. However, Coker refused to return the funds to Bantex or the Plaintiff.

10. Banda did not disclose to the Plaintiff that he owed a debt to Coker.

11. Bantex has been unable to repay the Plaintiff the $300,000 that Bantex tranferred to Coker. (Id. Ex. P (Banda Second Dep. at 21, 41).)

12. On October 11, 2004, the Plaintiff and Banda entered into an agreement titled "Acknowledgment of Indebtedness and Payment Agreement" in which Banda

acknowledged the $351,600.00 debt and agreed to repay the Plaintiff. (Am. Compl. ¶ 6.) Banda has failed to comply with the terms of the agreement.[1]

13. The Plaintiff moved for partial summary judgment on its Statute of Elizabeth claim pursuant to S.C. Code § 27-23-10, alleging that the transfer of the money from Bantex to Coker was a fraudulent conveyance which must be rendered null and void pursuant to the Statute of Elizabeth.

14. Coker moved for summary judgment on the Plaintiff's Statute of Elizabeth and conversion claims. Coker alleges that the Plaintiff's Statute of Elizabeth and conversion claims fail as a matter of law because: (1) the transfer of money from Bantex to Coker is not covered under the plain language of the Statute; (2) the transfer was made based on valuable consideration and there was no intent to defraud by Bantex; (3) the Plaintiff was not an existing creditor at the time of the transfer to Bantex because the purchase order provided that Bantex had until June 30, 2004, more than 3 weeks after the transfer, to perform under the purchase order; and (4) the Plaintiff failed to conduct sufficient due diligence to determine Banda's financial status. In addition, Coker alleges that the Plaintiff's conversion claim fails because the Plaintiff had no immediate right to possession of the money at the time the funds were transferred to Bantex.

15. The court held a hearing on November 28, 2006. At the hearing, the parties agreed that no material facts remained in dispute concerning the Plaintiff's claim

---

[1] The court entered a default judgment against Banda in the amount of $385,914 plus interest at the rate of 4.7%, and against Bantex in the amount of $405,286.36 plus interest at the rate of 4.7%.

pursuant to the Statute of Elizabeth, S.C. Code Ann. § 27-23-10(A). Because it is an equitable claim, the parties are not entitled to a jury trial on the Statute of Elizabeth claim. For the reasons set forth below, the court finds that the Plaintiff has proven by clear and convincing evidence its Statute of Elizabeth claim.[2] See Windsor Props. Inc. v. Dolphin Head Const. Co., 498 S.E.2d 858, 858 (S.C. 1998).

## II. CONCLUSIONS OF LAW

### A. Statute of Elizabeth

Section 27-23-10(A) of the South Carolina Code of Laws states:

> Every gift, grant, alienation, bargain, transfer, and conveyance of lands, tenements, or hereditaments, goods and chattels or any of them, or of any lease, rent, commons, or other profit or charge out of the same, by writing or otherwise, and every bond, suit, judgment, and execution which may be had or made to or for any intent or purpose to delay, hinder, or defraud creditors and others of their just and lawful actions, suits, debts, accounts, damages, penalties, and forfeitures must be deemed and taken (only as against that person or persons, his or their heirs, successors, executors, administrators and assigns, and every one of them whose actions, suits, debts, accounts, damages, penalties, and forfeitures by guileful, covinous, or fraudulent devices and practices are, must, or might be in any ways disturbed, hindered, delayed, or defrauded) to be clearly and utterly void, frustrate and of no effect, any pretense, color, feigned consideration, expressing of use, or any other matter or thing to the contrary notwithstanding.

"The Statute of Elizabeth renders void any transfer of property made with intent or purpose to delay, hinder, or defraud creditors and others." Carr v. Guerard, 616 S.E.2d 429, 430 (S.C. 2005) (internal quotation marks omitted). However, "[c]onveyances may be set aside for

---

[2] Because the court finds that the Plaintiff is entitled to judgment as a matter of law on the Statute of Elizabeth claim, the court declines to address the Plaintiff's conversion claim.

existing creditors, as well as for subsequent creditors." Mathis v. Burton, 460 S.E.2d 406, 408 (S.C. Ct. App. 1995).

> For existing creditors, conveyances can be set aside in two instances:
>
> First, where the challenged transfer was made for a valuable consideration, it will be set aside if the plaintiff establishes that (1) the transfer was made by the grantor with the actual intent of defrauding his creditors; (2) the grantor was indebted at the time of the transfer; and (3) the grantor's intent is imputable to the grantee.
>
> Second, where the transfer was not made on a valuable consideration, no actual intent to hinder or delay creditors must be proven. Instead, as a matter of equity, the transfer will be set aside if the plaintiff shows that (1) the grantor was indebted to him at the time of the transfer; (2) the conveyance was voluntary; and (3) the grantor failed to retain sufficient property to pay the indebtedness to the plaintiff in full–not merely at the time of the transfer, but in the final analysis when the creditor seeks to collect his debt.

Id. at 408. "Subsequent creditors may have conveyances set aside when (1) the conveyance was 'voluntary,' that is, without consideration, and (2) it was made with a view to future indebtedness or with an actual fraudulent intent on the part of the grantor to defraud creditors." Id.

### 1. The Transfer from Bantex to Coker is Covered under the Statute of Elizabeth.

As an initial matter, Coker argues that the transfer at issue in this case is not covered by the plain language of the Statute. The court recognizes that there is a "conflict of authority as to whether or not [the Statute of Elizabeth] applies to personal property." 37 C.J.S. Fraudulent Conveyances § 199. Research revealed no South Carolina case addressing this issue. Based on the broad language and equitable nature of the Statute, the court finds that the transfer of funds from Bantex to Coker is a "transfer" under the broad and plain language of section 27-23-10(A). See Smith v. Mutual Life Ins. Co. of New York, 158 F. 365, 366 (C.C. Mass. 1907) ("A

fraudulent transfer of money is within the terms of the Statute of Elizabeth as well as a fraudulent transfer of land or of goods.").

### 2. The Transfer was not Supported by Valuable Consideration.

In order to determine whether the transfer from Bantex to Coker violated the Statute, the court must first determine whether the transfer was supported by valuable consideration. Coker alleges that the valuable consideration is the partial satisfaction of the outstanding judgment Coker had obtained against Banda individually. Coker cites a North Carolina bankruptcy case, In re Jeffrey Bigelow Design Group, Inc., 956 F.2d 479 (4th Cir. 1992), to support the argument that consideration was given to Bantex for the use of Bantex's funds to pay Banda's pre-existing debt. However, Jeffrey Bigelow is distinguishable from the facts of the case at bar. In Jeffrey Bigelow, the corporation owed a debt to its shareholder, and the shareholder owed the identical debt to the creditor. The corporation made payments directly to the creditor. The Fourth Circuit found that the payments by the corporation to the shareholder's creditor were not fraudulent because the payments satisfied both the corporation's debt to its shareholder and the same debt the shareholder owed to the creditor. In the case at bar, the transfer of the money from Bantex to Coker was wholly unrelated to Banda's pre-existing debt to Coker.

Further, in Jackson v. Lewis, 12 S.E. 560, 561-62 (S.C. 1891), the South Carolina Supreme Court held that, by itself, the transfer of money to satisfy a pre-existing debt is not supported by valuable consideration. Instead, Coker must show that Bantex transferred the money for the purpose of paying the pre-existing debt. Id. Bantex transferred the money to Coker to purchase the looms for Bantex's client in Mexico, not to partially satisfy Coker's judgment against Banda. (Pl.'s Mem. Supp. Summ. J. Ex. O (Banda Dep. at 10) & Ex. J

(Check) & Ex. Q (Coker Dep. at 20-21).)  Based on the foregoing, the court finds that the transfer of money from Bantex to Coker was made without consideration.

### 3. The Plaintiff was an Existing Creditor of Bantex at the time of the transfer from Bantex to Coker.

When a transfer is not based on valuable consideration, the transfer can be set aside under the statute if the plaintiff

> shows that (1) the grantor was indebted to him at the time of the transfer; (2) the conveyance was voluntary; and (3) the grantor failed to retain sufficient property to pay the indebtedness to the plaintiff in full–not merely at the time of the transfer, but in the final analysis when the creditor seeks to collect his debt.

Mathis v. Burton, 460 S.E.2d 406, 408 (S.C. Ct. App. 1995).

### (a) Bantex was indebted to the Plaintiff at the time of the transfer from Bantex to Coker.

Coker submits that Bantex was not indebted to the Plaintiff until June 30, 2004, the deadline for delivery of the looms under the purchase order.  (Pl.'s Mem. Supp. Summ. J. Exs. D & E (Purchase Order).)  To be an existing creditor, "[i]t is only necessary that the debt should have been in existence or the right of action have accrued at or before the time of the transfer." Albertson, 2006 WL 2946870, at *3.  The "inception of the debt or obligation is the time which controls."  Id.  Coker argues that because Bantex had until June 30, 2004, to perform under the purchase order, the Plaintiff was not an existing creditor at the time of the Bantex to Coker transfer.  The Plaintiff wired the money to Bantex to purchase the looms on May 17, 2004, and June 4, 2004.  (Pl.'s Mem. Supp. Summ. J.  Exs. F, G, H & I (Wire Transfers).  Therefore, Bantex possessed the Plaintiff's money on June 4, 2004, prior to the June 7, 2004, transfer of $300,000 from Bantex to Coker.  Hence, the debt was in existence on June 7, 2004.  Once Bantex received the Plaintiff's money, Bantex was required to either deliver the looms or return

8

the money. Based on the foregoing, the court finds that the Plaintiff became an existing creditor of Bantex on June 4, 2004.

Further, even if the Plaintiff was not an existing creditor at the time of the transfer from Bantex to Coker, the Plaintiff was one of the "others" that the Statute of Elizabeth protects. S.C. Code § 27-23-10(A). "Others" has been interpreted as "persons who, like creditors, have causes of action which may be prejudicially affected by a transfer of assets by one against whom the right of action exists." Brown v. Butler, 554 S.E.2d 431, 433 (S.C. Ct. App. 2001). The Plaintiff's ability to recover the money it transferred to Bantex has been prejudically affected by the $300,000 transfer from Bantex to Coker. Moreover, even if the court assumed that Bantex was not indebted to Coker until June 30, 2004, the wrongful transfer of the money to satisfy Banda's pre-existing judgment occurred on July 1, 2004. Under Coker's argument, until June 30, 2004, irrespective of the conversations between Coker and Banda, Coker could still deliver the looms to Bantex for delivery to the Plaintiff. Hence, under Coker's argument, it was only after the expiration of the June 30, 2004, deadline in the purchase order that the conveyance from Bantex to Coker became a wrongful transfer in violation of the Statute of Elizabeth because on that date, as the result of Coker's actions, Bantex was unable to fulfill its obligations. Based on the foregoing, the court finds that Bantex was indebted to the Plaintiff at the time of the transfer from Bantex to Coker on June 7, 2004.

**(b)     The Conveyance was Voluntary.**

For the reasons discussed above, the transfer was voluntary as it was not supported by valuable consideration.

> **(c)    Bantex failed to retain sufficient property to pay the indebtedness to the Plaintiff.**

Finally, the Plaintiff must show that "the grantor failed to retain sufficient property to pay the indebtedness to the plaintiff in full–not merely at the time of the transfer, but in the final analysis when the creditor seeks to collect his debt." Mathis, 460 S.E.2d at 408. In South Carolina National Bank v. Halter, the South Carolina Court of Appeals held that "the litmus test for determining whether equity will take cognizance of a claim under the Statute is whether the Plaintiff creditor has alleged and proven that his . . . debtor is insolvent." 359 S.E.2d 74, 77 (S.C. Ct. App. 1987). Coker argues that Bantex was not rendered insolvent by the transfer. Banda testified that Bantex has never declared bankruptcy or been declared insolvent. (Def.'s Trial Brief 11; Pl.'s Mem. Supp. Summ. J. Ex. O (Banda Dep. at 29-30).) However, it is undisputed that Bantex has not paid the indebtedness to the Plaintiff. Further, Banda testified that neither he nor Bantex has ever had the funds to repay the Plaintiff. (Pl.'s Mem. Supp. Summ. J. Ex. P (Banda Second Dep. at 21, 41).) Moreover, Coker admits that Banda has failed to satisfy Coker's judgment against him. The judgment was returned nulla bona. (Id. Ex. C (Nulla Bona Return).) Hence, the court finds that Bantex is insolvent and does not have sufficient assets to pay its debt to the Plaintiff. Based on the foregoing, the court finds in favor of the Plaintiff on its Statute of Elizabeth claim. Pursuant to the Statute of Elizabeth, the $300,000 transfer from Bantex to Coker on June 7, 2004, is rendered null and void.

It is therefore

**ORDERED** that the Plaintiff is awarded $300,000. It is further

**ORDERED** that the parties brief whether the Plaintiff is entitled to pre-judgment interest within ten (10) days of the date of this order.

**IT IS SO ORDERED.**

                                             s/Henry M. Herlong, Jr.
                                             United States District Judge

Greenville, South Carolina
January 4, 2007